COWAN, LIEBOWITZ & LATMAN, P.C.
114 West 47th Street
New York, New York 10036
(212) 790-9200
Richard S. Mandel

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza
New York, New York 10119
(212) 594-5000
Albert Togut
Frank A. Oswald
Neil Berger

*Attorneys for Stephen S. Gray, Not Individually But Solely
In His Capacity as a Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| 96 WYTHE ACQUISITION, LLC | : | Case No. 21-22108 (SHL) |
| | : | |
| Debtor. | : | |

------------------------------------------------------x

| | | |
|---|---|---|
| STEPHEN S. GRAY, Not Individually But | : | |
| Solely In His Capacity as Chapter 11 Trustee | : | |
| of the Estate of 96 Wythe Acquisition, LLC, | : | Adv. Pro. No. 22-07048 (SHL) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| THE WILLIAMSBURG HOTEL BK, LLC, TOBY | : | |
| MOSKOVITS, MICHAEL LICHTENSTEIN | : | |
| and HERITAGE EQUITY PARTNERS, | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------x

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 4

    The Parties ....................................................................................................................... 4

    The Bankruptcy Case ..................................................................................................... 5

    The Benefit Street Loan and Defaults ......................................................................... 7

    The Hotel and the IP Assets Used in its Operation ................................................. 8

    Defendants' Inconsistent Positions Regarding the IP Assets .................................. 10

ARGUMENT ......................................................................................................................... 12

    A.   Legal Standards ..................................................................................................... 12

    B.   The IP Assets Constitute Property of the Estate ............................................. 14

    C.   The Court Should Order Moskovits to Voluntarily Surrender the Registrations for "The Williamsburg Hotel" and "Sleep With A Local" Service Marks, Which Were Void Ab Initio ........................................................................................................ 22

CONCLUSION ...................................................................................................................... 23

32804/001/4231797.1

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Sleek Craft, Inc. v. Nescher,*
    131 B.R. 991 (D. Ariz. 1991)........................................................................................................19

*American Dirigold Corp. v. Dirigold Metals Corp.,*
    125 F.2d 446 (6th Cir. 1942) ......................................................................................................14

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ....................................................................................................................13

*Automated Prods. v. FMB Maschinenbaugesellschaft mbH & Co.,*
    1994 U.S. Dist. LEXIS 13149 (N.D. Ill. Sept. 15, 1994) ..........................................................15

*Berk v. St. Vincent's Hosp. & Med. Ctr.,*
    380 F. Supp. 2d 334 (S.D.N.Y. 2005)........................................................................................14

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ....................................................................................................................13

*In re CIS Corp.,*
    214 B.R. 108 (Bankr. S.D.N.Y. 1997).........................................................................................14

*Conolty v. Conolty O'connor NYC LLC,*
    111 U.S.P.Q.2d 1302 (T.T.A.B. 2014).........................................................................................23

*Dovenmuehle v. Gilldorn Mortg. Midwest Co.,*
    871 F.2d 697 (7th Cir. 1989) ......................................................................................................14

*Freeland v. Burdick,*
    200 Mo. App. 226, 204 S.W. 1123 (1918)...................................................................................16

*Goenaga v. Mar. of Dimes Birth Defects Found.,*
    51 F.3d 14 (2d Cir. 1995) ...........................................................................................................13

*Gordon Electronics, Inc. v. Katone Corp.,*
    1991 U.S. Dist. LEXIS 673 (S.D.N.Y. Jan. 17, 1991).................................................................18

*Great Seats, Ltd. v. Great Seats, Inc.,*
    84 U.S.P.Q.2d 1235 (T.T.A.B. 2007) ..........................................................................................20

*In re Gucci,*
    202 B.R. 686 (Bankr. S.D.N.Y. 1996).........................................................................................21

32804/001/4231797.1

*Holiday Inn v. Holiday Inns, Inc.*,
    534 F.2d 312 (C.C.P.A. 1976) ........................................................................................ 19

*Huang v. Tzu Wei Chen Food Co. Ltd.*,
    849 F.2d 1458 (Fed. Cir. 1988) ..................................................................................... 19

*Johanna Farms, Inc. v. Citrus Bowl, Inc.*,
    468 F. Supp. 866 (E.D.N.Y. 1978) ................................................................................ 15

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ....................................................................................................... 13

*Plitt Theatres, Inc. v. Am. Nat'l Bank & Tr. Co.*,
    697 F. Supp. 1031 (N.D. Ill. 1988) ............................................................................... 16

*President Suspender Co. v. MacWilliam*,
    238 F. 159 (2d Cir. 1916) .............................................................................................. 14

*Rhea v. Bacon*,
    87 F.2d 976 (5th Cir. 1937) ........................................................................................... 16

*SEC v. Research Automation Corp.*,
    585 F.2d 31 (2d Cir. 1978) ............................................................................................ 13

*Speed Prods. Co. v. Tinnerman Prods.*,
    179 F.2d 778 (2d Cir. 1949) .......................................................................................... 14

*Stogop Realty Co. v. Marie Antoinette Hotel Co.*,
    217 A.D. 555, 217 N.Y.S. 106 (1st Dep't 1926) ...................................................... 1, 16

*Sunbio Corp. v. Biogrand Co.*,
    2021 U.S.P.Q.2d 1220 (Fed. Cir. 2021) ....................................................................... 20

*Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc.*,
    920 F.3d 243 (5th Cir. 2019) ........................................................................................ 14

*Vaad L'Hafotzas Sichos, Inc. v. Kehot Publication Soc.*,
    935 F. Supp. 2d 595 (E.D.N.Y. 2013) .......................................................................... 14

*White Satin Mills Corp. v. Woodward*,
    34 F.2d 158 (D. Minn. 1929), *aff'd*, 42 F.2d 987 (8th Cir. 1930) ................................ 19

*Wonderbread 5 v. Gilles*,
    115 U.S.P.Q.2d 1296 (T.T.A.B. 2015) ......................................................................... 23

*Yellowbook, Inc. v. Brandeberry*,
    708 F.3d 837 (6th Cir. 2013) ........................................................................................ 14

32804/001/4231797.1

*Ying Jing Gan v. N.Y.C.,*
    996 F.2d 522 (2d Cir. 1993) ................................................................................................... 13

**Statutes**

*11 U.S.C. § 1104(c)* ...................................................................................................................... 5

15 U.S.C. § 1051(a)(1) ................................................................................................................. 19

Bankruptcy Code Chapter 11 ............................................................................................ *passim*

**Other Authorities**

37 C.F.R. § 2.172 ......................................................................................................................... 22

Fed. R. Civ. P. 56(a) ............................................................................................................. 12, 13

Fed. R. Civ. P. 56(c)(1) .............................................................................................................. 13

Federal Rules of Bankruptcy Procedure Rule 7056 ............................................................... 1, 12

J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition* (5th ed.
    2022) ........................................................................................................... 14, 16, 18, 19

32804/001/4231797.1

TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:

Plaintiff Stephen S. Gray, not individually but solely in his capacity as Chapter 11 Trustee ("Plaintiff" or "Trustee") of the estate of 96 Wythe Acquisition, LLC (the "Debtor") hereby moves for summary judgment, pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (1) declaring that the Debtor owns "The Williamsburg Hotel" name and service mark, the "Sleep With A Local" service mark and all other intellectual property (whether registered or unregistered, or arising at common law, by statute, or otherwise) utilized in the operation of The Williamsburg Hotel located at 96 Wythe Avenue, Brooklyn, New York (the "Hotel"), including, without limitation, electronic and other digital assets and information related to the Hotel's operation, online presence and related marketing, such as the Hotel's domain name www.thewilliamsburghotel. com (the "Domain Name"), which should be transferred from Heritage to the Debtor, and the Hotel's social media platforms (all collectively, the "IP Assets"), and (2) ordering Defendant Toby Moskovits ("Moskovits") to voluntarily surrender for cancellation U.S. Reg. No. 6285046 for "The Williamsburg Hotel" service mark and U.S. Reg. No. 5890332 for the "Sleep With A Local" service mark.

## PRELIMINARY STATEMENT

As this Court previously ruled in determining to appoint a Chapter 11 Trustee, there is clear and convincing evidence that the Debtor's principals misled the Court by creating documents after-the-fact in an improper attempt to increase their leverage and

make their legal position stronger in the event of a sale of the Hotel.  Defendants'

attempts to claim ownership of the IP Assets constitute a continuation of those bad faith

efforts.  In the same way that Defendants sought to rely on a spurious backdated

management agreement that would have vested ownership of "The Williamsburg Hotel"

name and service mark with their hotel management company, Defendants now seek to

rely on trademark registrations that Moskovits secured in her own name for the hotel

name and an additional service mark used by the Hotel, "Sleep With A Local."

At the time Moskovits applied for those registrations, the lender which had a

perfected security interest and lien in the Debtor's assets, including its intellectual

property, had already sent multiple loan default notices to the Debtor.  Indeed, by the

time of the second of those two trademark filings (the one for the hotel name), the

lender had already instituted a foreclosure action against the Debtor and the Hotel.

Moreover, Defendants' own trademark lawyer had advised Moskovits that trademarks

should be owned by the entity that was actually using the mark "unless there is a reason

otherwise."  Moskovits nevertheless filed the applications in her own name.  The only

conceivable "reason otherwise" for doing that rather than filing in the name of the

Debtor, which was actually using the marks, was to attempt to keep the property out of

the Debtor's estate so that Defendants could claim ownership for themselves.

Defendants apparently intend to argue that the service marks at issue were

somehow licensed by them to the Hotel.  However, there is no evidence of any such

2

license agreement.  Certainly, no such license was ever disclosed in the schedules of

assets and liabilities Defendants filed for the Debtor.  The notion that Moskovits had

effectively made an oral license with herself allowing the Hotel to use a mark that she

owned not only defies common sense, but it is contrary to basic trademark law

recognizing that trademarks pass with the sale of the business they symbolize as an

essential part of the business and its good will.  Such rule has long been followed in the

context of hotel names, which generally attach to and designate the particular premises

with which they are used and become inseparably associated with that location so as to

pass with the transfer of ownership of the building.

   These fundamental principles govern resolution of the ownership dispute here.

"The Williamsburg Hotel" name, which is physically embedded on the building of the

Hotel, is inseparably associated with the Hotel's business conducted at the 96 Wythe

Avenue premises.  The same is true with respect to "The Sleep With A Local" service

mark, which has been used solely in connection with the Hotel, always in close proximity

to the hotel name with which the slogan is associated.  The other digital assets,

including notably the Domain Name connected to the Hotel's website, similarly revolve

around the Hotel and the services offered there.  The IP Assets all constitute property

used in the operation of the Hotel and forming part of that business to be sold. There is

no basis for permitting the hotel management company, which earns no revenues apart

from the Hotel and operates no other hotels, or the Debtor's insiders to wrest such assets away from the new owners of the Hotel.

## STATEMENT OF FACTS

<u>The Parties</u>

1.      Plaintiff is the Chapter 11 trustee of the Debtor.  Plaintiff's Statement of Undisputed Facts Pursuant to Local Rule 7056-1 ("<u>Pl. 7056-1 St.</u>")[1] ¶ 1.

2.      The Debtor is a New York limited liability company, which owns and operates the Hotel, a 10-story, 147-room independent hotel, constructed in 2017, and located at 96 Wythe Avenue, Brooklyn, New York.  Pl. 7056-1 St. ¶ 2.

3.      Defendant The Williamsburg Hotel BK, LLC (the "<u>Manager</u>") is a New York limited liability company.  Prior to the Trustee's appointment, the Manager managed the Hotel.  Pl. 7056-1 St. ¶ 3.

4.      Moskovits is an individual residing in New York, and she is an indirect owner of both the Debtor and the Manager.  Pl. 7056-1 St. ¶ 4.

5.      Michael Lichtenstein ("<u>Lichtenstein</u>") is an individual residing in New York, and he is an indirect owner of both the Debtor and the Manager.  Pl. 7056-1 St. ¶ 5.

6.      Heritage Equity Partners ("<u>Heritage</u>") is a New York partnership owned by Moskovits and Lichtenstein, and it owns the Domain Name.  Pl. 7056-1 St. ¶ 6.

---

[1] References herein to Pl. 7056-1 St." are to Plaintiff's Statement of Undisputed Facts Pursuant to Local Rule 7056-1 filed herewith.

32804/001/4231797.1

<u>The Bankruptcy Case</u>

7.      On February 23, 2021, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.  Pl. 7056-1 St. ¶ 7.

8.      No official committee of unsecured creditors has been appointed in this Chapter 11 case (the "<u>Chapter 11 Case</u>").  Pl. 7056-1 St. ¶ 8.

9.      On May 5, 2021, the Debtor filed its schedules of assets and liabilities [Dkt. No. 31], and it filed amended schedules on December 2, 2021 and May 25, 2022 [Dkt. Nos. 205 & 411] (collectively, the "<u>Schedules</u>").  Pl. 7056-1 St. ¶ 9.

10.     On October 15, 2021, Benefit Street Partners Realty Operating Partnership, L.P. ("<u>Benefit Street</u>") filed its *Motion to Appoint an Examiner Pursuant to 11 U.S.C. § 1104(c)* [Dkt. No. 147], which was granted by the Court on November 8, 2021 by entry of the *Order Directing Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)* [Dkt. No. 178], which order was subsequently amended on November 23, 2021 by entry of the *Amended Order Directing Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)* [Dkt. No. 193] and on December 14, 2021 by entry of the *Second Amended Order Directing Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)* [Dkt. No. 224].  Pl. 7056-1 St. ¶ 10.

5

11.      On November 16, 2021, the Court entered the *Order Approving Appointment of Examiner* [Dkt. No. 186], and Eric M. Huebscher was appointed as the examiner (the "Examiner") in this Chapter 11 Case.  Pl. 7056-1 St. ¶ 11.

12.      On February 28, 2022, the Examiner issued his report (the "Examiner Report") [Dkt. No. 418] wherein the Examiner found that there were sufficient grounds to appoint a trustee in the Chapter 11 Case.  On March 21, 2022, the Examiner issued a supplemental report [Dkt. No. 465].  Pl. 7056-1 St. ¶ 12.

13.      On March 28, 2022, Benefit Street filed its *Renewed Motion for the Appointment of a Chapter 11 Trustee Based on Continuing Malfeasance* [Dkt. No. 476] and on March 31, 2022 the United States Trustee filed its *Motion for an Order Directing the Appointment of a Chapter 11 Trustee* [Dkt. No. 491], raising concerns of potential impropriety on behalf of the Debtor's management and requesting the appointment of a Chapter 11 trustee (together, the "Trustee Appointment Motions").  Pl. 7056-1 St. ¶ 13.

14.      Following evidentiary hearings conducted on May 17 and 25, 2022 and post-hearing oral argument on May 26, 2022 (the "May 26 Hearing Transcript") [Dkt. No. 598], on May 27, 2022 the Court entered its *Order Granting Motions to Appoint a Chapter 11 Trustee* [Dkt. No. 591].  Pl. 7056-1 St. ¶ 14.

15.      On May 31, 2022, the United States Trustee filed his *Notice of Appointment of Chapter 11 Trustee* [Dkt. No. 592] and filed an application for the

appointment of a Chapter 11 trustee [Dkt. No. 593], subject to Court approval.  Pl. 7056-1 St. ¶ 15.

16.     The Court entered its *Order Granting the Application for Appointment of Chapter 11 Trustee* [Dkt. No. 594] approving the appointment of the Trustee on May 31, 2022.  Pl. 7056-1 St. ¶ 16.

## The Benefit Street Loan and Defaults

17.     On December 13, 2017, Benefit Street made a loan to the Debtor in the principal amount of $68 million to finance the construction and operation of the Hotel (the "Loan"), governed and evidenced by, among other things, a certain Loan Agreement by and between Benefit Street and the Debtor dated December 13, 2017 (the "Loan Agreement") and a Consolidated Mortgage by and between Benefit Street and the Debtor dated as of December 13, 2017 (the "Consolidated Mortgage").  Pl. 7056-1 St. ¶ 17.

18.     The Consolidated Mortgage provided Benefit Street with liens against all the Debtor's assets, including, without limitation, all the Debtor's intellectual property. Pl. 7056-1 St. ¶ 18.

19.     On December 10, 2018, Benefit Street sent the Debtor a notice of default, notifying the Debtor that it had defaulted under the Loan.  Benefit Street thereafter sent additional default notices in January, March and June of 2019 for failure to make

payments under the Loan, including the failure to repay the full balance of the Loan upon its maturity.  Pl. 7056-1 St. ¶ 19.

20.    On June 11, 2019, Benefit Street commenced a foreclosure action against the Debtor and the Hotel in the Supreme Court of the State of New York, New York County, Index No. 653396/2019 (the "Foreclosure Action").  The Debtor alleged counterclaims and asserted various affirmative defenses.  Pl. 7056-1 St. ¶ 20.

21.    Benefit Street moved for summary judgment on its foreclosure claim and the Debtor's counterclaims and affirmative defenses, and on April 9, 2020, the Supreme Court entered an order denying Benefit Street's motion for summary judgment on its foreclosure claim, while dismissing certain of the Debtor's counterclaims and affirmative defenses (the "Denial Order").  Pl. 7056-1 St. ¶ 21.

22.    Benefit Street appealed the Denial Order.  On February 16, 2021, the First Department issued a ruling partially reversing the Denial Order and granting summary judgment in full in favor of Benefit Street.  Pl. 7056-1 St. ¶ 22.

## The Hotel and the IP Assets Used in its Operation

23.    The Hotel is upscale and full-service, featuring a full food and beverage operation that includes a restaurant, a lobby bar, outdoor café, a lounge bar, water tower bar and event ballroom.  Other amenities include additional meeting and conference rooms, an on-site fitness center, and a rooftop pool and bar with panoramic views across the East River to the New York City skyline.  Pl. 7056-1 St. ¶ 23.

32804/001/4231797.1

24.     The Hotel opened in or around January 2017, and it has consistently

operated under the name and service mark "The Williamsburg Hotel" since that time.  Pl.

7056-1 St. ¶ 24.

25.     The name of the Hotel is physically embedded onto the building in which

the Hotel operates and offers Its services at 96 Wythe Avenue.  Pl. 7056-1 St. ¶ 25.

26.     The Manager collected all the Debtor's revenues earned from the Hotel's

operations, and it has no independent income apart from the income generated from

the Hotel's operations.  Pl. 7056-1 St. ¶ 26.

27.     The Manager does not have any independent expenses apart from those

associated with the Hotel's operations, which are paid through revenues generated by

the Hotel.  Pl. 7056-1 St. ¶ 27.

28.     The Hotel is the only hotel that the Manager managed during the relevant

periods referenced in the Complaint.  Pl. 7056-1 St. ¶ 28.

29.     Since in or around 2016, the Hotel has been advertised and promoted

under the slogan "Sleep With A Local."  The sole use of the "Sleep With A Local" service

mark has been in close proximity to "The Williamsburg Hotel" name and mark, in

connection with, and to advertise and promote, the services offered at the Hotel.  Pl.

7056-1 St. ¶ 29.

30.     Apart from "The Williamsburg Hotel" and "Sleep With A Local" service

marks, other intellectual property utilized in the operation of the Hotel includes

electronic and other digital assets and information related to the Hotel's operation,

online presence and related marketing, such as the Hotel's Domain Name and social

media platforms.  The Domain Name, the website, the social media platforms and other

digital assets all revolve around the Hotel and the services offered there.  Pl. 7056-1 St. ¶

30.

**Defendants' Inconsistent Positions Regarding the IP Assets**

31.    In August 2019, less than two months after Benefit Street commenced its

Foreclosure Action against the Debtor, Moskovits filed a federal trademark application in

her individual name seeking to register "The Williamsburg Hotel" service mark.  Pl. 7056-

1 St. ¶ 31.

32.    The United States Patent & Trademark Office ("USPTO") issued a federal

registration to Moskovits on the Supplemental Register for "The Williamsburg Hotel"

service mark (Reg. No. 6285046) on March 2, 2021.  Pl. 7056-1 St. ¶ 32.

33.    Several months prior to the trademark filing for "The Williamsburg Hotel"

service mark, on April 11, 2019, Moskovits also filed a federal service mark application in

her individual name seeking to register the "Sleep With A Local" service mark.  Pl. 7056-

1 St. ¶ 33.

34.    As of the time of the April 2019 USPTO filing for the "Sleep With A Local"

service mark, Benefit Street had already issued several letters to Debtor notifying Debtor

that it was in default under the Loan, which was secured by the Hotel and all of the

Debtor's intellectual property associated with the Hotel.  Pl. 7056-1 St. ¶ 34.

35.     The USPTO issued a registration to Moskovits on the Principal Register for

the "Sleep With A Local" service mark (Reg. No. 5890332) on October 22, 2019.  Pl.

7056-1 St. ¶ 35.

36.     Prior to the foregoing USPTO filings for "The Williamsburg Hotel" and

"Sleep With A Local" service marks, Moskovits asked Caroline Broehm, a trademark

attorney retained by Heritage, whether the trademarks should "be held by an entity vs.

an individual."  Pl. 7056-1 St. ¶ 36.

37.     Ms. Broehm advised that "whoever is operating the business and using the

mark should own the mark, unless there is a reason otherwise."  Pl. 7056-1 St. ¶ 37.

38.     There is no evidence that Moskovits ever individually operated the Hotel's

business or used the service marks at issue.  All of the companies that played any role in

connection with the Hotel, including the Debtor, the Manager and Heritage, were all

ultimately owned jointly by Moskovits and Lichtenstein.  Pl. 7056-1 St. ¶ 38.

39.      There is no evidence that Moskovits ever licensed "The Williamsburg

Hotel" or "Sleep With A Local" service marks to the Debtor or anyone else.  The

Schedules filed In the Chapter 11 Case by the Debtor did not list any trademark or

service mark licenses from Moskovits or the Manager to the Debtor.  Pl. 7056-1 St. ¶ 39.

11

40.     Defendants have also attempted in the Chapter 11 Case to rely on a purported Hotel Management Service Agreement dated November 21, 2017 (the "Purported November Agreement").  Pl. 7056-1 St. ¶ 40.

41.     The Purported November Agreement claims to provide that "The Williamsburg Hotel" name and service mark is owned by the Manager.  That claim is inconsistent with the fact that Moskovits filed and obtained a service mark registration for "The Williamsburg Hotel" on the Supplemental Register in her own name.  Pl. 7056-1 St. ¶ 41.

42.     In its ruling granting the Trustee Appointment Motions, this Court held that the Purported November Agreement is not a valid agreement, and that it was created after the fact in an improper effort to strengthen the legal position of the Debtor's insiders, Moskovits and Lichtenstein.  Pl. 7056-1 St. ¶ 42.

43.     The Purported November Agreement was not listed on the Debtor's Schedules, even though there would be no more important executory contract for the Debtor to list if it existed than an agreement with the Manager of the Hotel.  Pl. 7056-1 St. ¶ 43.

## ARGUMENT

### A.     Legal Standards

44.     Rule 56(a) of the Federal Rules of Civil Procedure, which is made applicable to bankruptcy courts by Fed. R. Bankr. P. 7056, provides that a court must grant summary judgment when there is no genuine issue of material fact to be tried and the

movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant bears the burden to show that

the undisputed facts entitle it to judgment as a matter of law.  *Id.*  The movant may

discharge that burden by citing record evidence or showing that an adverse party

cannot produce admissible evidence to support an essential element of the nonmoving

party's claim.  Fed. R. Civ. P. 56(c)(1); *see also Matsushita Elec. Indus. Co. Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986); *Goenaga v. Mar. of Dimes Birth Defects Found.*, 51

F.3d 14, 18 (2d Cir. 1995).

45.    Once the movant has discharged his initial burden, "the nonmoving party

may ... not rely simply on conclusory statements or on contentions that the affidavits

supporting the motion are not credible," *Ying Jing Gan v. N.Y.C.*, 996 F.2d 522, 532 (2d

Cir. 1993), and may not oppose summary judgment "by offering conclusions without

supplying supporting arguments or facts in opposition to that motion." *SEC v. Research*

*Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978).  Instead, the nonmoving party must

"go beyond the pleadings and ... designate specific facts showing that there is a genuine

issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted).

46.    The materiality of facts must be determined with reference to the

governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

fact is material "only if it affects the result of the proceeding and a fact is in dispute only

when the opposing party submits evidence such that a trial would be required to resolve

the differences." *In re CIS Corp.*, 214 B.R. 108, 118 (Bankr. S.D.N.Y. 1997).  Moreover, the

nonmoving party may not oppose summary judgment "on the basis of an unreasonable

view of the facts." *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 342

(S.D.N.Y. 2005).

## B.    The IP Assets Constitute Property of the Estate

47.    As Professor McCarthy explains in his leading trademark treatise, it "is an

old and clear rule, universally followed," that trademarks pass with the sale of an entire

business.  J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 18:37 (5th

ed. 2022).  Thus, "[w]hen a business is sold as a going concern, trademarks and the

goodwill of the business that the trademarks symbolize are presumed to pass with the

sale of the business ... as an essential part of the business and its good will."  *Id.*; *see*,

*e.g.*, *Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc.*, 920 F.3d 243, 248-50 (5th Cir.

2019); *Yellowbook, Inc. v. Brandeberry*, 708 F.3d 837, 844 (6th Cir. 2013); *Dovenmuehle v.*

*Gilldorn Mortg. Midwest Co.*, 871 F.2d 697, 700 (7th Cir. 1989); *Speed Prods. Co. v.*

*Tinnerman Prods.*, 179 F.2d 778, 782 (2d Cir. 1949); *President Suspender Co. v.*

*MacWilliam*, 238 F. 159, 162 (2d Cir. 1916); *Vaad L'Hafotzas Sichos, Inc. v. Kehot*

*Publication Soc.*, 935 F. Supp. 2d 595, 600 (E.D.N.Y. 2013).

48.    This rule is equally applicable in the bankruptcy context.  McCarthy, *supra*,

§ 18:37; *American Dirigold Corp. v. Dirigold Metals Corp.*, 125 F.2d 446, 453 (6th Cir.

1942) ("The law makes no distinction between voluntary and involuntary sales, and

where the trademark involved is not in law a personal one and the transfer is made by

operation of law through bankruptcy or a general assignment for the benefit of

creditors, the courts have held that ... the trademarks or trade names lawfully identified

with the business pass to one who purchases the business substantially as a whole").

49.     A trademark, service mark or trade name which is not personal in nature

constitutes a part of the assets of the estate of an insolvent and is regarded as saleable

in bankruptcy.  *Id.* § 18:28 (5th ed. 2022); *see also Automated Prods. v. FMB*

*Maschinenbaugesellschaft mbH & Co.*, 1994 U.S. Dist. LEXIS 13149, at *30 (N.D. Ill. Sept.

15, 1994) ("When owned by a bankrupt, except when strictly personal in nature, trade-

marks and trade-names pass with the good will of the bankrupt's business to the trustee

for the benefit of creditors, and, when the business to which they relate is sold intact by

the trustee, they pass In connection with the sale of the business to the purchaser ....")

(quoting *United States Ozone Co. v. United States Ozone Co.*, 62 F.2d 881, 886 (7th Cir.

1933); *Johanna Farms, Inc. v. Citrus Bowl, Inc.*, 468 F. Supp. 866, 874 (E.D.N.Y. 1978)

("[U]pon the bankruptcy of the trademark owner, the trademark together with the

goodwill it symbolizes becomes vested in the Trustee in Bankruptcy, and may be sold by

him as an asset of the estate.") (citations omitted).

50.     In the present case, "The Williamsburg Hotel" name and service mark is

inseparably associated with the business of the Hotel conducted at the 96 Wythe

Avenue premises.  Indeed, the hotel name is physically embedded onto the building.

15

Accordingly, the hotel name and service mark should pass with the sale of the building and associated business.  *See, e.g., Rhea v. Bacon*, 87 F.2d 976, 977 (5th Cir. 1937) ("That equity will protect the use of a trade-name applied to a particular place is well settled."); *Plitt Theatres, Inc. v. Am. Nat'l Bank & Tr. Co.*, 697 F. Supp. 1031, 1034-35 (N.D. Ill. 1988) ("Ownership of trademarks and service marks passes impliedly with ownership of the pertinent building or business with which the mark is associated, absent express provision to the contrary.").

51.     It has long been recognized in the context of trademark disputes between hotel owners and their tenants "that the name of a hotel is usually the property of the owner of the real property rather than the current operating tenant."  McCarthy, *supra*, § 16:38; *see, e.g., Stogop Realty Co. v. Marie Antoinette Hotel Co.*, 217 A.D. 555, 564, 217 N.Y.S. 106, 114 (1st Dep't 1926) ("The right to use the name 'Hotel Marie Antoinette' was inseparably associated with the Sixty-Sixth street premises and passed as an incident with the transfer of the fee of such premises...."); *Freeland v. Burdick*, 200 Mo. App. 226, 230,  204 S.W. 1123 (1918) ("[H]otel names generally attach to the place and designate the particular premises rather than the proprietor thereof, and are not transitory with him.  In such case the name remains with the place regardless of any change in the ownership or person conducting the business there.").

52.     The same reasoning applies to the present dispute concerning ownership of "The Williamsburg Hotel" name and service mark.  Defendants have at various times

16

asserted inherently contradictory positions concerning ownership of the hotel name.

They produced a spurious management agreement, the Purported November

Agreement, which claimed to attribute ownership of the hotel name to the Manager.

Mandel Decl. Ex. S (section 13.01).  That claimed ownership is itself inconsistent with the

federal trademark registration for "The Williamsburg Hotel" service mark, which was

obtained in the name of Moskovits individually.  Mandel Decl. Ex. N.

53.    The cases cited above establish that the ownership of the hotel name and

service mark appropriately pass with the ownership of the physical premises and

associated business conducted at the Hotel, not with a particular entity managing the

Hotel or one of the management company's insider owners.  Indeed, there is no logical

reason why "The Williamsburg Hotel" name would be associated with the Manager

rather than the Hotel itself.  The record makes plain that the Hotel is the only hotel that

the Manager managed during the relevant periods, so there is no basis for consumers to

connect any services provided by the Manager with anything other than the Hotel.  *See*

Pl. 7056-1 St. ¶ 28 *supra*.  Moreover, the Manager had no independent revenue apart

from the income generated from the Hotel's operations, and its sole expenses were

associated with the Hotel's operations and were paid through revenues generated by

the Hotel.  *See id.* ¶¶ 26-27 *supra*.  Thus, as is typically the case with hotel names, "The

Williamsburg Hotel" name and mark serves to identify the particular premises located at

96 Wythe Avenue to members of the consuming public and to distinguish the Hotel from other hotels.

54.     There is even less logic for finding that Moskovits owns "The Williamsburg Hotel" service mark individually, because it is undisputed that Moskovits never operated any of the businesses associated with the hotel individually, but only through entities owned jointly with Lichtenstein.  *See* Pl. 7056-1 St. ¶ 38 *supra*.  Moskovits' decision to file trademark applications for both "The Williamsburg Hotel" and "Sleep With A Local" in her own name years after the Hotel opened disregarded her own trademark lawyer's advice that "whoever is operating the business and using the mark should own the mark, unless there is a reason otherwise."  *See* Pl. 7056-1 St. ¶¶ 36-37 *supra*.  Clearly, Ms. Moskovits was not personally operating any of the Hotel's business or using the marks individually, and in fact the retainer agreement with the law firm that filed the trademark applications was not with Moskovits, but with Heritage (another entity owned jointly with Lichtenstein).  *See* Mandel Decl. Ex. R.

55.     That Moskovits secured the registrations in her own name does not somehow establish ownership rights in her.  "It is well settled that trademark rights do not flow from registration, but from the acquisition of common law rights through prior appropriation and use in the market."  *Gordon Electronics, Inc. v. Katone Corp.*, 1991 U.S. Dist. LEXIS 673, at *6 (S.D.N.Y. Jan. 17, 1991).  As Professor McCarthy succinctly explains,

if a trademark application is filed in the name of the party that did not own the mark,

the application is void *ab initio*:

> The applicant for a use-based registration must be the owner of the mark.  If the entity filing the application was not the owner of the mark as of the filing date, the application is void *ab Initio*.  This is a statutory requirement and cannot be waived.

McCarthy, *supra*, § 19:53; *see, e.g., Huang v. Tzu Wei Chen Food Co. Ltd.*, 849 F.2d 1458,

1460 (Fed. Cir. 1988) ("Neither the Board nor the courts can waive [the] statutory

requirement" that trademark applications be filed in the name of the owner of the

mark); *Holiday Inn v. Holiday Inns, Inc.*, 534 F.2d 312, 319 n. 6 (C.C.P.A. 1976) ("One must

be the owner of a mark before it can be registered."); 15 U.S.C. § 1051(a)(1) ("The owner

of a trademark used in commerce may request registration ....").

56.    Any attempt by Defendants to rectify the defects in their claimed chain of

title by alleging the existence of licenses from Moskovits to the Hotel (or the Manager)

would be unavailing and factually and legally without foundation.  Courts have been

skeptical of attempts by individuals to retain ownership of trademarks when their

businesses seek bankruptcy relief by claiming that there was only a license in place with

their bankrupt businesses.  *See, e.g., Am. Sleek Craft, Inc. v. Nescher*, 131 B.R. 991, 998

(D. Ariz. 1991) (rejecting claim that individual only licensed trade name to corporation

where he "provided no evidence that he expressly licensed the trade name" to

corporation and "did not present any evidence, even remotely suggesting that there was

an oral license"); *White Satin Mills Corp. v. Woodward*, 34 F.2d 158, 160 (D. Minn. 1929),

*aff'd*, 42 F.2d 987 (8th Cir. 1930) ("To my mind, it is not reasonable or probable that John H. Woodward, an individual, or a corporation, or whatever he may have been at the time he formed the corporation, verbally licensed himself as a corporation to use the trade-mark 'White Satin.'").

57.    In the present case, the record is devoid of any evidence that the Hotel's use of the hotel name (or other IP Assets) was pursuant to a license from Moskovits, the Manager or anyone else.  *See*, *e.g.*, *Sunbio Corp. v. Biogrand Co.*, 2021 U.S.P.Q.2d 1220 (Fed. Cir. 2021) (registration void because no evidence shown that license existed from registrant to company using the mark); *Great Seats, Ltd. v. Great Seats, Inc.*, 84 U.S.P.Q.2d 1235, 1239 (T.T.A.B. 2007) (cancelling registration where no evidence that owner corporation licensed user corporation, even though both were controlled by same person).

58.    Significantly, no trademark licenses were listed in the Schedules that Defendants filed on behalf of Debtor in the Chapter 11 Case.  *See* Pl. 7056-1 St. ¶ 39 *supra*.  Any assertion of a license here by Defendants would constitute nothing but an after-the-fact effort to strengthen the legal position of the Debtor's insiders, Moskovits and Lichtenstein, of exactly the same kind this Court already found in rejecting the legitimacy of the Purported November Agreement in its ruling on the Trustee Appointment Motions.  *See* Pl. 56.1 St. ¶ 42 *supra*.

32804/001/4231797.1

59.     Moreover, permitting Defendants somehow to retain control and

ownership of "The Williamsburg Hotel" name would improperly impair Estate value by

thwarting the ability of a new owner of the Hotel to carry on the business the Trustee

sells because the hotel name, which is even physically embedded into the building in

which the Hotel offers its services, is inexorably tied to the business being sold. *See*,

*e.g.*, *In re Gucci*, 202 B.R. 686, 690 (Bankr. S.D.N.Y. 1996) (finding post-petition designs

created by Paolo Gucci under his trademark constituted property of debtor's estate

where trustee had sold Gucci's trademark licensing business, because such designs were

impossible to separate from licensing business and thus would amount to right to

continue the very business sold).

60.     For the same reasons, the "Sleep With A Local" service mark and

remainder of the IP Assets, including the Domain Name, should also be deemed

property of the Debtor.  The sole use of the "Sleep With A Local" service mark has been

in close proximity to "The Williamsburg Hotel" name and mark, in connection with, and

to advertise and promote, the services offered at the Hotel.  *See* Pl. 7056-1 St. ¶ 29

*supra*.  Likewise, the Domain Name, the website, the social media platforms and other

digital assets all prominently use the hotel name and revolve around the Hotel and the

services offered there.  *Id.* ¶ 30.  The Manager, which is no longer involved in the

operations of the Hotel and operates no other hotels, has no need for these assets other

21

than as an Improper means to attempt to personally extract value from the new owners

which will continue the Hotel's operations.

**C.**     **The Court Should Order Moskovits to Voluntarily Surrender the Registrations for "The Williamsburg Hotel" and "Sleep With A Local" Service Marks, Which Were Void Ab Initio**

61.     The statutory regulations for the federal trademark statute provide that

"[u]pon application by the owner, the Director may permit any registration to be

surrendered for cancellation."  37 C.F.R. § 2.172.  This Court should order Moskovits to

voluntarily surrender for cancellation "The Williamsburg Hotel" and "Sleep With A Local"

service mark registrations, which were void *ab initio* because they were filed in the name

of Moskovits individually.

62.     As discussed above, it is a statutory requirement, which cannot be waived,

that a trademark application be filed in the name of the proper owner.  When the filing

is made in the name of a party that did not own the trademark at the time of filing, the

application is void *ab initio* and subject to cancellation.  *See* ¶ 55 *supra*.  For the reasons

addressed in detail above, the service marks were properly owned by the Debtor and

thus were not filed in the name of the correct owner.  *See* ¶¶ 47-60 *supra*.

63.      However, separate and apart from any issue concerning the Debtor's

ownership, it is clear that under no circumstances was Moskovits properly named as an

individual owner.  As addressed above, she did not perform any services or use the

32804/001/4231797.1

marks in her individual capacity, because all the companies involved with the Hotel were owned jointly with Lichtenstein.  *See* Pl. 7056-1 St. ¶ 38 *supra*.

64.    Case law recognizes that when an applicant files individually for a mark that is owned jointly with another party, the registration is subject to cancellation.  *See, e.g., Wonderbread 5 v. Gilles*, 115 U.S.P.Q.2d 1296 (T.T.A.B. 2015) (cancelling registration filed in name of individual where mark was owned by a band of which he was a member); *Conolty v. Conolty O'connor NYC LLC*, 111 U.S.P.Q.2d 1302 (T.T.A.B. 2014) (owner of a use-based application (a corporation solely controlled by O'Connor) was not owner of mark because Conolty and O'Connor were joint owners of mark).

65.    Nor can the registrations be rescued by claiming that the individual licensed the mark to another entity, where, as here, there is no evidence of any valid license.  *See* ¶¶ 57-58 *supra*.  Accordingly, the registrations obtained in Moskovits' name for "The Williamsburg Hotel" and "Sleep With A Local" are void *ab initio* because they were never owned by Moskovits individually.  The Court should thus order Moskovits to file the necessary documents with the USPTO voluntarily cancelling the registrations.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, the Trustee respectfully requests that this Court enter an order granting Plaintiff summary judgment (1) declaring that the Debtor owns the IP Assets, including, without limitation, "The Williamsburg Hotel" and "Sleep With A Local" service marks and the digital assets used in connection with the

marketing of the Hotel, including, without limitation, the Domain Name, which Heritage

should be ordered to transfer to the Debtor, and (2) ordering Moskovits to voluntarily

surrender for cancellation U.S. Reg. No. 6285046 for "The Williamsburg Hotel" service

mark and U.S. Reg. No. 5890332 for the "Sleep With A Local" service mark.

Dated:  New York, New York
      January 5, 2023

STEPHEN S. GRAY
Not Individually But Solely in His
Capacity as Chapter 11 Trustee
By His Attorneys,
COWAN, LIEBOWITZ & LATMAN, P.C.
By:

*/s/Richard S. Mandel*

*RICHARD S. MANDEL*
*JOEL KARNI SCHMIDT*
*JEREMY A. BERMAN*
*114 West 47th Street*
*New York, New York 10036*
*(212) 790-9200*

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza
New York, New York 10019
(212) 594-5000
ALBERT TOGUT
FRANK A. OSWALD
NEIL BERGER

24