**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

In re:                                                          Chapter 11

96 WYTHE ACQUISITION, LLC,                          Case No. 21-22108 (SHL)

                                    Debtor.

-----------------------------------------------------------------x
STEPHEN S. GRAY, not individually but solely in
his capacity as Chapter 11 Trustee of the estate of
96 Wythe Acquisition, LLC,

                                    Plaintiff,

                vs.

THE WILLIAMSBURG HOTEL BK, LLC,                     Adv. Pro. No. 22-07048 (SHL)
TOBY MOSKOVITS, MICHAEL LICHTENSTEIN
and HERITAGE EQUITY PARTNERS,

                                    Defendants.

-----------------------------------------------------------------x

## MEMORANDUM OF DECISION

**A P P E A R A N C E S :**

**COWAN, LIEBOWITZ & LATMAN, P.C.**
*Special IP Counsel for Plaintiff Stephen S. Gray, the Chapter 11 Trustee of 96 Wythe Acquisition,*
*LLC*
114 West 47th Street
New York, New York 10036
By:    Richard S. Mandel, Esq.
        Joel K. Schmidt, Esq.
        Jeremy A. Berman, Esq.

**TOGUT, SEGAL & SEGAL LLP**
*Counsel for Plaintiff Stephen S. Gray, the Chapter 11 Trustee of 96 Wythe Acquisition, LLC*
One Penn Plaza
New York, New York 10119
By:    Albert Togut, Esq.
        Frank A. Oswald, Esq.
        Neil Berger, Esq.

**FERN FLOMENHAFT PLLC**
*Counsel for Defendants The Williamsburg Hotel BK, LLC, Toby Moskovits, Michael
Lichtenstein, and Heritage Equity Partners*
26 Broadway, 26th Floor
New York, New York 10004
By:    Fern Flomenhaft, Esq.


**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the *Plaintiff's Motion for Summary Judgment* [ECF No. 10][1] (the

"Motion") against The Williamsburg Hotel BK, LLC, Toby Moskovits, Michael Lichtenstein,

and Heritage Equity Partners (collectively, the "Defendants") in the above-captioned adversary

proceeding, filed by Stephen S. Gray, the Chapter 11 Trustee (the "Trustee" or "Plaintiff") of 96

Wythe Acquisition, LLC (the "Debtor").   The dispute here is about the ownership of certain

intellectual property relating to the Debtor's operation of The Williamsburg Hotel, a 10-story,

147-room independent hotel located at 96 Wythe Avenue, Brooklyn, NY (the "Hotel").   The

Trustee moves for summary judgment (i) declaring that this intellectual property is owned by the

Debtor, and (ii) ordering that Toby Moskovits surrender for cancellation her registrations of the

service marks for the intellectual property.   *See* Motion at 1; *see also* Complaint [ECF No. 1] (the

"Compl.") at ¶¶ 56–61.   For the reasons set forth below, the Motion is granted.

## BACKGROUND

The following facts are derived from *Plaintiff's Statement of Undisputed Facts Pursuant

to Local Rule 7056-1* [ECF No. 11] (the "Trustee's Facts"), the *Declaration of Richard S.

Mandel, Esq. in Support of Plaintiff's Motion for Summary Judgment* [ECF No. 12] (the

---

[1]       Unless otherwise indicated, references in this Memorandum of Decision to docket entries on the Case
Management/Electronic Case Files ("ECF") system are to Adversary Proceeding No. 22-07048.

"Mandel Decl."), the *Declaration of Fern Flomenhaft in Opposition to Plaintiff's Motion for
Summary Judgment and in Support of Defendants' Cross Motion* [ECF No. 21], the *Declaration
of Toby Moskovits in Opposition to Plaintiff's Motion for Summary Judgment* [ECF No. 23] (the
"Moskovits Decl."),[2] the *Reply Declaration of Richard S. Mandel, Esq. in Further Support of
Plaintiff's Motion for Summary Judgment* [ECF No. 26] (the "Mandel Reply Decl."), the *Reply
Declaration of Jared White in Further Support of Plaintiff's Motion for Summary Judgment*
[ECF No. 27], all attached exhibits, and the record of proceedings in the underlying bankruptcy
case (Case No. 21-22108).[3]  As this dispute is focused on the legal significance of the facts
asserted by the Defendants in claiming ownership of the Marks (as defined below), the factual
record here is fairly modest.

---

[2]     In response to the Trustee's Facts, the Defendants submitted the *Defendants' Response to Plaintiff's
Statement of Facts and Additional Material Facts as to Which It Is Contended That There Is a Genuine Issue to be
Tried Pursuant to Local Rule 7056-1* [ECF No. 22] (the "Defendants' Responsive Facts").  Local Rule 7056-1(d)
provides that each numbered paragraph in a statement of material facts shall be deemed admitted for the purposes of
the motion unless specifically controverted in the opposing party's responsive statement.  *See* S.D.N.Y. LBR 7056-
1(d).  For many of the numbered paragraphs, the Defendants do not dispute a fact itself but only the relevance or
materiality of the facts asserted by the Trustee.  In some instances, the Defendants clarified the Trustee's statements
or added additional factual allegations.  Moreover, the Defendants often do not cite to any evidence in the record to
support or controvert any statements as is required under Local Rule 7056-1(e).  *See* S.D.N.Y. LBR 7056-1(e); *see
also In re Sultan Realty, LLC*, 2012 WL 6681845, at *4 (Bankr. S.D.N.Y. Dec. 21, 2012).  For purposes of summary
judgment, therefore, the Court has treated as undisputed those instances where the Defendants did not specifically
controvert or dispute a fact contained in the Trustee's Facts that was properly supported by evidence submitted by
the Trustee.

[3]     The Court may take judicial notice of proceedings in the underlying bankruptcy case for purposes of its
decision in this adversary proceeding.  *See In re AMR Corp.*, 567 B.R. 247, 250, n.2 (Bankr. S.D.N.Y. 2017), *aff'd
sub nom. Krakowski v. Am. Airlines, Inc.*, 610 B.R. 714 (S.D.N.Y. 2019), *aff'd sub nom. In re AMR Corp.*, 834 F.
App'x 660 (2d Cir. 2021); *cf. Ferrari v. Cty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011) ("In the Rule
12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents
that appear in the court records of prior litigation and that relate to the case *sub judice*."); *Am. Tissue, Inc. v.
Donaldson, Lufkin & Jenrette Sec. Corp.*, 351 F. Supp. 2d 79, 96 n.17 (S.D.N.Y. 2004) ("The Court can take judicial
notice of matters of public record . . . including filings in related lawsuits . . . ."); *Messer v. Wei Chu (In re Xiang
Yang Gao)*, 560 B.R. 50, 55 n.4 (Bankr. E.D.N.Y. 2016) (taking judicial notice of relevant documents filed in
debtor's bankruptcy case and related adversary proceedings) (citing cases).

I.    **THE DEBTOR AND THE SERVICE MARKS**

At all relevant times for purposes of this dispute, the Debtor—a New York limited

liability company formed in 2012—owned the Hotel.  *See* Trustee's Facts ¶ 2; *see also* Mandel

Reply Decl., Ex. T.  The Hotel opened to the public in or around January 2017 and has

consistently operated under the name and service mark "The Williamsburg Hotel" since that

time.[4]  *See* Trustee's Facts ¶ 24.  The "Sleep With A Local" service mark was used to advertise

and promote services offered at the Hotel.  *See* Trustee's Facts ¶ 29.  Defendant Toby Moskovits

("Moskovits"), alongside Defendant Michael Lichtenstein ("Lichtenstein"), is a joint owner of

three entities: the Debtor; Defendant Williamsburg Hotel BK, LLC (the "Manager"); and

Defendant Heritage Equity Partners ("Heritage").  *See* Moskovits Decl. ¶ 1.  The Manager, a

New York limited liability company created prior to the Trustee's appointment, managed the

Hotel.  *See* Trustee's Facts ¶ 3; *see also* Moskovits Decl. ¶ 16.

Moskovits states that she personally owns both "The Williamsburg Hotel" and "Sleep

With A Local" service marks (together, the "Marks"), either by operation of common law or, in

the alternative, through registration.  *See generally* Moskovits Decl. ¶¶ 4–10 (describing

development, creation, and promotional efforts); *id.* ¶¶ 21–23 (discussing United States Patent

and Trademark Office ["USPTO"] registrations).  Alongside Lichtenstein, Moskovits conceived

"The Williamsburg Hotel" brand sometime in 2012.  *See id.* ¶ 4.  Moskovits claims to have first

used the "The Williamsburg Hotel" Mark in 2014.  *See id.* ¶¶ 4–7.  As evidence of the first use of

"The Williamsburg Hotel" Mark, Moskovits points to the 2014 creation of social media accounts

for The Williamsburg Hotel and registration of the domain name

---

[4]    A service mark is a word, name, symbol, or device used to identify and distinguish services.  *See* 15 U.S.C.
§ 1127.

(www.thewilliamsburghotel.com), as well as the use of "The Williamsburg Hotel" Mark on the

website beginning in November 2015.  *See id.*  It is less clear when Moskovits first claims use of

the "Sleep With A Local" Mark.  At one point in their pleadings, the Defendants claim that

Moskovits first used the "Sleep With A Local" Mark prior to 2017.  *See* Defendants' Opposition

(as defined below) at 6.  In her declaration, Moskovits states that she used both the "Sleep With

A Local" and "The Williamsburg Hotel" Marks for various promotional events and marketing

campaigns to identify hotel services available at The Williamsburg Hotel beginning in 2015.  *See*

Moskovits Decl. ¶¶ 7–9.

Moskovits asserts that "Michael [Lichtenstein] and [she] personally handled all aspects of

these marketing events independent of the business entities of Manager or Debtor."  *Id.* ¶ 9.  In

addition to promotion and marketing, Moskovits also planned to launch additional hotel

locations using "The Williamsburg Hotel" and "Sleep With A Local" Marks; her efforts in that

regard include completing architectural renderings for a Bushwick location in 2016 and

beginning plans for the launch of a Miami location.  *See id.* ¶ 13.  Moskovits also claims to be

developing a furniture line using "The Williamsburg Hotel" Mark, though Defendants have not

submitted any details of such plans.  *See id.* ¶ 26.

Separate from any claim of use in business of the "The Williamsburg Hotel" and "Sleep

With A Local" Marks, Moskovits registered the Marks with the USPTO.  *See id.* ¶¶ 22–23.  In

April 2019, Moskovits filed a trademark application with the USPTO seeking to register the

"Sleep With A Local" Mark in her individual name.  *See* Mandel Decl., Ex. O.  In August 2019,

Moskovits filed another trademark application with the USPTO seeking to register "The

Williamsburg Hotel" Mark in her individual name.  *See* Mandel Decl., Ex. M.  On October 22,

2019, the USPTO issued a registration to Moskovits in her personal capacity on the Principal

Register for the "Sleep With A Local" Mark (Reg. No. 5890332). *See* Mandel Decl., Ex. P. On March 2, 2021, the USPTO issued a federal registration to Moskovits in her personal capacity on the Supplemental Register for "The Williamsburg Hotel" Mark (Reg. No. 6285046). *See* Mandel Decl., Ex. N.

## II.    THE BANKRUPTCY CASE

The Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on February 23, 2021. *See* Trustee's Facts ¶ 7; *see also* Case No. 21-22108, ECF No. 1. In October 2021, Benefit Street Partners Realty Operating Partnership, L.P. ("Benefit Street"), the Debtor's secured lender, filed a *Motion to Appoint an Examiner Pursuant to 11 U.S.C. § 1104(c)* [Case No. 21-22108, ECF. No. 147], which was granted by the Court on November 8, 2021 [Case No. 21-22108, ECF No. 178]. Benefit Street had loaned the Debtor approximately $68 million USD for the construction of the Hotel and thus held liens at the time of the bankruptcy filing on substantially all of the Debtor's assets, including any intellectual property. *See* Trustee's Facts ¶¶ 17–18. In November 2021, the Court entered the *Order Approving Appointment of Examiner*. *See* Trustee's Facts ¶ 11 (citing Case No. 21-22108, ECF No. 186). The Examiner ultimately found that the principals were running the bankruptcy case for their own benefit, as opposed to the benefit of all creditors, and that there were grounds to appoint a trustee in the Chapter 11 case. *See* Trustee's Facts ¶ 12; *see also generally Report of Examiner, Eric M. Huebscher*, dated Feb. 28, 2022 [Case No. 21-22108, ECF No. 418] at 24 ("[T]he investigation raises significant areas of concern surrounding the conduct of [Moskovits and Lichtenstein], both in their roles in the multitude of challengeable transactions identified in this report, but also in their fiduciary roles in administering the bankruptcy estate, including their lack of independence."); *Supplemental Report and Rebuttal of Examiner, Eric M Huebscher*

[Case No. 21-22108, ECF No. 465] at 6 ("While the Report raises significant concerns about the lack of independence by the Principals, the promulgation of Counter-Report and Debtor's Response significantly amplifies these concerns.").  At the end of May 2022, the Court entered an *Order Approving the Appointment of Chapter 11 Trustee* [Case No. 21-22108, ECF No. 594], appointing Stephen S. Gray as Trustee.  *See* Trustee's Facts ¶ 16.

Some six months later, the Trustee filed the above-referenced adversary proceeding against the Defendants, seeking entry of a judgment: (i) declaring that the Debtor owns "The Williamsburg Hotel" Mark, the "Sleep With A Local" Mark, and all other intellectual property (whether registered or unregistered, or arising at common law, by statute or otherwise) used in the operation of the Hotel including, without limitation, electronic and other digital assets and information related to the Hotel's operation, online presence and related marketing, such as the Hotel's website domain name and social media platforms (collectively, the "IP Assets"); and (ii) ordering Moskovits to voluntarily surrender for cancellation U.S. Reg. No. 6285046 for "The Williamsburg Hotel" Mark and U.S. Reg. No. 5890332 for the "Sleep [W]ith [A] Local" Mark. *See* Compl. ¶ 2.  Defendants filed their *Answer* [ECF No. 9] (the "Answer") in late December 2022.  The underlying premise of the Trustee's request is that the Debtor owns the Marks as the owner of the Hotel.

In the latter half of January 2023, the Court approved the sale of The Williamsburg Hotel and certain related assets by the Trustee to Quadrum Development Corp. ("Quadrum").  *See Order (A) Approving the Sale Free and Clear of All Liens, Claims, Interests, and Encumbrances; (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [Case No. 21-22108, ECF No. 881] (the "Order Approving the Sale").

The Trustee filed this Motion in late January 2023, which was opposed by the

Defendants. *See Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for

Summary Judgment* [ECF No. 20] (the "Defendants' Opposition").  The Trustee subsequently

filed its reply.  *See Plaintiff's Reply Memorandum of Law in Further Support of Motion for

Summary Judgment* [ECF No. 25] (the "Reply").  Oral argument on the Motion was held in

March 2023.[5]

After oral argument on the Motion, the parties agreed to a standstill regarding the use of

the IP Assets by Quadrum as the Hotel owner while the matter was under advisement with the

Court.  *See Stipulation and Order Establishing Standstill Period Regarding Intellectual Property

Dispute* [ECF No. 36] (the "Standstill Agreement").  Following the close of oral argument, the

Court received several letters from both parties [ECF Nos. 33–34, 38, 41–42] and a

*Supplemental Opposition from the Defendants* [ECF No. 40].  The Court considers the record

closed as of March 1, 2023—the date of the oral argument—and will not consider any new

arguments raised in these subsequent submissions.[6]

---

[5]      The Defendants filed a *Motion to Withdraw the Bankruptcy Reference* [ECF No. 16], which the United
States District Court for the Southern District of New York denied on May 18, 2023.  *See Order*, *Stephen S. Gray v.
The Williamsburg Hotel BK, LLC*, Case No. 23-00498, ECF No. 39 (S.D.N.Y. May 18, 2023).  This adversary
proceeding addresses whether the Marks are property of the estate and whether those Marks passed in the
bankruptcy sale to Quadrum. Accordingly, this is a core proceeding.  *See In re Gordos Restaurant Corp.*, 643 B.R.
1, 21 (Bankr. S.D.N.Y. 2022) ("Courts have no difficulty finding that 'property of the estate' encompasses intangible
property interests such as trademarks and trade names and associated goodwill."); *In re DeFlora Lake Development
Associates, Inc.*, 571 B.R. 587, 593 (Bankr. S.D.N.Y. 2017) ("A determination on whether certain property is
property of the estate is not only a core proceeding, it is a proceeding that involves this Court's exclusive
jurisdiction. . . . It follows that a determination of what constitutes property of the estate subject to this Court's
exclusive jurisdiction, also belongs to the Bankruptcy Court."); *In re Velo Holdings Inc.*, 475 B.R. 367, 386 (Bankr.
S.D.N.Y. 2012) ("The determination whether something is property of the estate is a core matter.").  To the extent it
is determined that this is not a core proceeding, the District Court may treat this Memorandum of Decision as
proposed findings of fact and conclusions of law.  *See* S.D.N.Y. LBR 9033-1 ("If the Court determines that it cannot
enter a final order or judgment consistent with Article III of the United States Constitution in a particular proceeding
referred to the Court and designated as core under section 157(b) of title 28, and the Court hears the proceeding,
Rule 9033(a), (b), and (c) of the Federal Rules of Bankruptcy Procedure shall apply.").

[6]      To the extent the letters provide relevant case law for arguments already presented in the parties' motion
papers, the Court will consider such authority.  *See* ECF Nos. 33–34.  But to the extent the papers raise arguments
which were not briefed in the original submissions by the parties, such as standing and mootness, such arguments

## DISCUSSION

### I.    LEGAL STANDARDS

#### A.    Summary Judgment

Under Federal Rule of Civil Procedure 56, made applicable to this case under Federal Rule of Bankruptcy Procedure 7056, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of establishing that no genuine issue of material fact exists.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The burden then shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  The non-movant must present "concrete evidence from which a reasonable juror could return a verdict in his favor," *Anderson*, 477 U.S. at 256, and "may not rely on conclusory allegations or unsubstantiated speculation."  *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citations omitted); *see also Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.") (quoting *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996)).  In short, if the Court determines that "the record taken as a whole could not lead a rational trier of fact to find

---

are untimely.  *See* ECF Nos. 38 and 40; *Phx. Light SF DAC v. U.S. Bank Nat'l Ass'n*, 2021 U.S. App. LEXIS 29749, at *4–5 (2d Cir. Oct. 4, 2021) ("Plaintiffs' arguments . . . were plainly not made in their opposition to summary judgment.  We decline Plaintiffs' invitation to reach those arguments now.") (citing *Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004)).  All letters which further argue such belatedly raised issues will also not be considered.  *See* ECF Nos. 41–42.

for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).

In ruling on a motion for summary judgment, the court must draw all reasonable inferences against the moving party. *See Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). Properly supported facts that are presented in a statement of material facts, and not specifically controverted by an opposing party, are deemed to be admitted. *See* S.D.N.Y. LBR 7056-1(d) ("Each numbered paragraph in the statement of material facts required to be served by the moving party shall be deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").

B.    Standard for Service Marks

The Lanham Act is "[t]he foundation of current federal trademark law." *Matal v. Tam*, 582 U.S. 218, 224 (2017). The Lanham Act defines a trademark as "any word, name, symbol, or device, or any combination thereof . . . [used] to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods . . . ." 15 U.S.C. § 1127; *see also* 2 McCarthy on Trademarks and Unfair Competition § 3:1 (5th ed.). Likewise, the Lanham Act defines a service mark as "any word,

name, symbol, or device, or any combination thereof . . . [used] to identify and distinguish the

services of one person, including a unique service, from the services of others and to indicate the

source of the services, even if that source is unknown." 15 U.S.C. § 1127. Service marks are

used to identify services, while trademarks are used to identify goods. *See id.* Because courts

use substantially the same standard for trademark and service mark violations, courts generally

consider them together. *See Murphy v. Provident Mut. Life Ins. Co. of Phila.*, 923 F.2d 923, 927

(2d Cir. 1990) ("Whether a mark is one or the other, the standards for determining infringement

are essentially the same."); *see also* 2 McCarthy on Trademarks and Unfair Competition § 3:1

(5th ed.).[7]

The purpose of trademark (and service mark) protection is namely "to identify the goods

or services of one seller and distinguish them from those offered by others."[8] 2 McCarthy on

Trademarks and Unfair Competition § 16:1 (5th ed.); *see B & B Hardware, Inc. v. Hargis Indus.,*

*Inc.*, 575 U.S. 138, 142 (2015) ("The principle underlying trademark protection is that distinctive

marks—words, names, symbols, and the like—can help distinguish a particular artisan's goods

from those of others."). Indeed, a mark's function "is simply to designate the goods as the

product of a particular trader and to protect his good will against the sale of another's product as

his . . . it is not the subject of property except in connection with an existing business." *La*

---

[7] The Marks in dispute in this adversary proceeding are service marks. *See* Mandel Decl., Ex. N; Mandel Decl., Ex. P; *see also* Trustee's Facts ¶¶ 24, 29.

[8] While the Court uses the phrase "trademark protection" here, this applies to service marks as well, because the same principles apply to either kind of mark. *Murphy*, 923 F.2d at 927 ("A servicemark differs from a trademark only in that a servicemark identifies services rather than goods. . . . Whether a mark is one or the other, the standards for determining infringement are essentially the same."); *see also Rockland Exposition, Inc. v. Alliance of Automotive Service Providers of New Jersey*, 894 F. Supp. 2d 288, 304 (S.D.N.Y. 2012) ("A service mark is 'identical to a trademark in all respects,' except that it is used to identify the source of services, rather than goods.") (citations omitted); *see also* 1 McCarthy on Trademarks and Unfair Competition § 9:1 (5th ed.); *In re Reliable Air, Inc.*, 2007 WL 7143407, at *7 (Bankr. N.D. Ga. Sept. 14, 2007) ("Property rights in trade names and service marks are governed by the same general principles.") (citing 1 McCarthy on Trademarks and Unfair Competition § 9:1 (4th ed.)).

*Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271 (2d Cir. 1974);

*see also Modular Cinemas of Am., Inc. v. Mini Cinemas Corp.*, 348 F. Supp. 578, 582 (S.D.N.Y.

1972) ("There is no such thing as property in a trademark except a right pertaining to an

*established* business with which the mark is employed.") (internal quotations and citation

omitted). A mark has no separate existence from the good will of the good or service it

symbolizes and cannot be sold unless the associated good will is also sold. *See* 1 McCarthy on

Trademarks and Unfair Competition §§ 2:15–2:16 (5th ed.).

An unregistered mark may be protected under the Lanham Act "if it would qualify for

registration . . . ." *See Lopez v. Gap, Inc.*, 883 F. Supp. 2d 400, 414 (S.D.N.Y. 2012) (citing

*Courtenay Commc'ns Corp. v. Hall*, 334 F.3d 210, 214 n.2 (2d Cir. 2003)). To qualify for

registration, however, an unregistered mark first must "have been used in commerce, not merely

adopted . . . ." *Lopez*, 883 F. Supp. 2d at 415 (citing *Gameologist Grp., LLC v. Scientific Games

Int'l, Inc.*, 838 F. Supp. 2d 141, 154 (S.D.N.Y. 2011). Thus, ownership of a mark is conferred

upon the party who was first to use that designation in the marketplace. *See* 2 McCarthy on

Trademarks and Unfair Competition § 16:35 (5th ed.); *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96

F.3d 1217, 1219 (9th Cir. 1996); *see also Talk to Me Products, Inc. v. Larami Corp.*, 804 F.

Supp. 555, 559 (S.D.N.Y. 1992) ("The exclusive right to a distinctive mark belongs to the one

who first uses it in connection with a particular line of business.").

Consistent with these principles, a party can demonstrate ownership of a mark by

showing that it was "the first to use a particular mark to identify his goods or services in a given

market" and that it "continues to make use of the mark." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d

135, 146 (2d Cir. 2007); *La Societe Anonyme des Parfums le Galion*, 495 F.2d at 1271

(ownership goes to "[t]he user who first appropriates the mark"); *Agrotiki Viomichania Galaktos*

12

*Ipirou Dodoni A.E. v. Fantis Foods, Inc.*, 2015 WL 1029651, at *5 (S.D.N.Y. 2015)

("[O]wnership usually is determined by use of the mark in commerce coupled with control of the

quality of the goods.").  "A mark shall be deemed to be in use in commerce . . . on services when

it is used or displayed in the sale and advertising of services and the services are rendered in

commerce . . . ."  15 U.S.C. § 1127; *see also Morningside Grp. Ltd. v. Morningside Cap. Grp.,

L.L.C.*, 182 F.3d 133, 138 (2d Cir. 1999) (holding that a service mark is used in commerce in a

Section 43(a) trademark infringement context when services are "rendered to others," that is,

"[when] the service provider *in fact* benefits third parties, regardless of its reason for providing

its services.").  Stated differently, "there can be no trademark absent goods sold and no service

mark without services rendered."  *Am. Express Co. v. Goetz*, 515 F.3d 156, 161 (2d Cir. 2008);

*see also In re Suuberg*, 2021 WL 5944419, at *4 (T.T.A.B. Dec. 10, 2021) (holding a service

mark applicant's mark is not in use until the business seeking registration has rendered the

services in connection with the mark); *Couture v. Playdom, Inc.*, 778 F.3d 1379, 1382 (Fed. Cir.

2015) (holding cancellation of a trademark registration appropriate where there was no evidence

that the trademark was actually used in providing services in commerce at the time the trademark

was registered).  Thus, "the mere advertising or promotion of a mark . . . is insufficient to

constitute 'use' of the mark 'in commerce' . . . where that advertising or promotion is

unaccompanied by any actual rendering . . . of the services 'in connection with which the mark is

employed.'"  *Buti v. Perosa, S.R.L.*, 139 F.3d 98, 105 (2d Cir. 1998) (citing *United Drug Co. v.

Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918)).  The party seeking to prove prior use of a mark

must do so by a preponderance of the evidence.  *See* 2 McCarthy on Trademarks and Unfair

Competition § 16:20 (5th ed.) (citing to *Araujo v. Framboise Holdings Inc.*, 99 F.4th 1377, 1380

(Fed. Cir. 2024) ("The opposer has the burden to prove its prior use by a preponderance of the

evidence.")); *cf Lopez*, 883 F. Supp. 2d at 417 (in trademark infringement cases, court analyze

the "use in commerce" on a case by case basis, considering the totality of the circumstances)

(citing *Chere Amie v. Windstar Apparel Corp.,* 2002 WL 460065, at *12 (S.D.N.Y. Mar. 26,

2002)).

In addition to protection of a mark by use, a party may claim ownership based on

registration.  If a purported owner of a trademark can provide a valid registration, it will be

considered "*prima facie* evidence of the validity of the registered mark and of the registration of

the mark, [and] of the owner's ownership of the mark . . . ."  15 U.S.C. § 1057(b); *see also* 2

McCarthy on Trademarks and Unfair Competition § 16:19 (5th ed.); *Elastic Wonder, Inc. v.*

*Posey*, 179 F. Supp. 3d 307, 314 (S.D.N.Y. 2016) ("Posey's certificate of trademark registration

is *prima facie* evidence of . . . the registrant's ownership thereof . . . ."); *Lane Cap. Mgmt., Inc. v.*

*Lane Cap. Mgmt, Inc.*, 192 F.3d 337, 345 (2d Cir. 1999) ("A certificate of registration with the

PTO is prima facie evidence that the mark is registered and valid (*i.e.*, protectable), that the

registrant owns the mark, and that the registrant has the exclusive right to use the mark in

commerce.").  But such *prima facie* evidence is not conclusive: a senior user of an unregistered

mark is entitled to cancellation of a junior user's registration, as ownership rights go to the first

to use the mark.  *See Vantone Grp. Ltd. Liab. Co. v. Yangpu NGT Indus. Co.*, 2016 U.S. Dist.

LEXIS 98632, *17–18 (S.D.N.Y. July 28, 2016).

Given the focus on use of a mark in commerce, courts have generally held that

trademarks pass with the sale of a business, including in bankruptcy sales.  *See Johanna Farms,*

*Inc. v. Citrus Bowl, Inc.*, 468 F. Supp. 866, 874 (E.D.N.Y. 1978) ("[U]pon the bankruptcy of the

trademark owner, the trademark together with the goodwill it symbolizes becomes vested in the

Trustee in Bankruptcy . . . and may be sold by him as an asset of the estate."); 2 McCarthy on

Trademarks and Unfair Competition § 18:37 (5th ed.). As a leading treatise has observed:

> When a business is sold as a going concern, trademarks and the good will of
> the business that the trademarks symbolize are presumed to pass with the sale
> of the business. . . . Even if the words "trademark" or "good will" or similar
> terms are not mentioned in the contract of sale of the business, the
> trademarks of the business are presumed to pass to the buyer as an essential
> part of the business and its good will.

*Id.* This is particularly so with hotel names, which "generally attach to the place and designate

the particular premises rather than the proprietor thereof, and are not transitory with him."

*Freeland v. Burdick*, 204 S.W. 1123, 1124 (Mo. Ct. App. 1918); *see also Creative Arts by*

*Calloway, LLC v. Brooks*, 2012 WL 6732907, at *4 (S.D.N.Y. Dec. 27, 2012) ("There is no such

thing as property in a trade-mark except as a right appurtenant to an established business or trade

in connection with which the mark is employed.") (quoting *United Drug Co.*, 248 U.S. at 97).

## II.   OWNERSHIP OF MARKS HERE

As a preliminary matter, the Court needs to frame the dispute by identifying the parties

who claim ownership of the Marks here. Neither Lichtenstein nor the Manager nor Heritage

claim ownership of the Marks. While the Trustee correctly notes that the Defendants made

conflicting statements about ownership of the Marks throughout the bankruptcy case, *see, e.g.*,

Motion at 1–2, ¶¶ 41–42; Reply at 1, ¶¶ 4, 24, the Defendants in this adversary proceeding have

taken the consistent and unequivocal position that Moskovits—and no other Defendant—owned

the Marks. *See* Defendants' Opposition at 1 ("[I]ntellectual property that was conceptualized,

developed, and is lawfully owned, by defendant Toby Moskovits . . . ."); *id.* at 1 ("Moskovits is

the owner of THE WILLIAMSBURG HOTEL and SLEEP WITH A LOCAL marks by virtue of

having adopted and first used these marks, indeed long prior to the opening of the hotel."); *see*

*generally id.* at 4–7. The Defendants maintained this position at oral argument. *See* Hr'g Tr.

60:9–12, ECF No. 35 (Mar. 1, 2023) ("Our position is, we've never taken—my client has never taken different positions about who owns the trademark.  It's clearly always been owned by Toby Moskovits who registered it in her own name."); *id.* at 62:17–18 ("It was not his—no one ever said this was their trademark; it's her trademark, which she licensed to the hotel."); *id.* at 62:23–25 ("She owned the trademark and she licensed it to the hotel.  And to the—not to the hotel, but to the manager."); *id.* at 63:8–9 ("So basically she owned this; she licensed it; she permitted the manager to use it.").

The sole issue before the Court is, therefore, whether the Debtor or Moskovits owns the Marks, which requires an analysis of the parties' use of the Marks prior to and at the time of the opening of the Hotel.  The parties agree that ownership of the Marks is conferred upon whomever first uses the Marks in the marketplace.  *See* Motion at ¶ 55; Defendants' Opposition at 4.  And Moskovits concedes that "it is generally true that trademarks pass with the sale of a business."  *See* Defendants' Opposition at 15.  Consistent with these principles, the Marks would have passed in the sale of the Debtor's business and building to Quadrum, absent evidence establishing the Marks belonged to Moskovits and were not the Debtor's to convey.  *See Am. Sleek Craft, Inc. v. Nescher*, 131 B.R. 991, 996–97 (D. Ariz. 1991) ("The law presumes that when a business is conveyed, its trade name and good will are also conveyed. . . . Unless there is evidence to the contrary, a trade name will be presumed to have passed . . . to one to whom the business has been transferred.") (internal quotations and citations omitted); *see also Plitt Theatres, Inc. v. Am. Nat'l Bank & Trust Co.*, 697 F. Supp 1031, 1034–35 (N.D. Ill. 1988) ("Ownership of trademarks and service marks passes impliedly with ownership of the pertinent building or business with which the mark is associated, absent express provision to the contrary.").

Moskovits claims ownership of the Marks, arguing that she acquired a protectable interest in the Marks in three ways: her use of the Marks before the Hotel opened; her development of the idea for the Marks; and her registration of the Marks. But for the reasons to be discussed, none of these actions establish her ownership of the Marks, which instead passed to Quadrum in the sale of the Hotel.[9]

A.    Moskovits' Claims of Prior Use

Moskovits relies on her use of the Marks on social media accounts and the internet prior to the opening of the Hotel in 2017 to establish her ownership of the Marks. *See* Moskovits Decl. ¶ 7. Under Section 43(a) of the Lanham Act, however, a party cannot establish a proprietary interest in a mark until the mark is used in commerce. *See* 15 U.S.C. § 1125(a)(1). Thus, ownership of a mark is only established as of the first actual use of a mark in a genuine commercial transaction. *See, e.g., United Drug Co.*, 248 U.S. at 97 ("[T]he right to a particular mark grows out of its use, not its mere adoption."); *see also Hydro-Dynamics, Inc. v. George Putnam & Co., Inc.*, 811 F.2d 1470, 1474 (Fed. Cir. 1987) ("Subsequent adoption of the mark does not convert a shipment for the purpose of advisory consultation on the merits of a proposed trademark into a bona fide use of the mark in commerce."). As discussed above, "use in

---

[9]    The Defendants claim that the Plaintiff has not demonstrated any reason for the Court to rule on the issue of ownership of the Marks, especially "in light of the recent, imminent sale of the Hotel to the heavily branded Arlo group, which clearly has no interest in the service marks at issue." *See* Defendants' Opposition at 2. But the Court disagrees. It is not the Court's place to speculate as to what Quadrum, as the purchaser of the Hotel, may wish to do with the Marks if the Marks passed to Quadrum in the sale. In fact, the Purchase and Sale Agreement contemplates that such Marks would be sold to Quadrum if they are indeed the Debtor's property. *See* Order Approving the Sale, Exhibit A (Purchase and Sale Agreement), ¶ 1.4 ("(ii) to the extent a current ownership dispute is determined in Seller's favor and Seller is deemed to own and control the Debtor's intellectual property, trade names, trademarks, and service marks, the sale shall include all property rights, title and interest of Seller in and to the trade names, trademarks and service marks of Seller with respect to 'The Williamsburg Hotel' and all of Seller's right, title and interest in and to all domain names, registrations or address used in connection with the Property and the Hotel, including, without limitation, www.thewilliamsburghotel.com."); *see also* Reply at 31 ("Whether or how [Quadrum] will choose to use all those assets does not somehow vest Defendants with a greater claim to those assets.").

commerce" under Section 43(a) of the Lanham Act is not just any use, it is use in connection with the services that the mark itself represents.

Said another way, the "advertising of [a] service, as distinguished from its performance, may not" be treated as service under the Act. *Murphy*, 923 F.2d at 927. Courts do consider that "[u]nlike trademarks, service marks usually cannot be 'affixed' or displayed in close connection with the services, so advertisements and solicitations are often used as evidence of use." *Am. Express Co.*, 515 F.3d at 161. But "it cannot be said that a service mark is actually used if it is displayed in an advertisement for services that are non-existent or will only hypothetically be available at some point in the future." *Id.* Thus, the use in advertising which creates a right in a service mark must be advertising which relates to an existing service that has already been offered to the public. *See generally In re Nationwide Mutual Ins. Co.*, 124 U.S.P.Q. 465 (T.T.A.B. Mar. 11, 1960). And while "[a]dvertising expenditures provide circumstantial evidence of the possible effect that advertising of the trademark or [service mark] may have on consumers' association of it with the source of a product or service . . . [m]erely showing that a certain amount was spent on advertising provides little support for secondary meaning absent some demonstration that the advertisements caused consumers to associate the service with Plaintiff." *Rockland Exposition, Inc.*, 894 F. Supp. 2d at 319, *as amended* (Sept. 19, 2012) (internal quotation marks and citations omitted); *see also Gameologist Grp., LLC*, 838 F. Supp. at 158 (noting that promotional efforts did not favor plaintiff where plaintiff made no showing that promotional efforts were successful in associating the mark with plaintiff in the mind of consumers); *Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*, 478 F. Supp. 2d 340, 345 (E.D.N.Y. 2007) ("[P]laintiff has not submitted any concrete evidence showing that these [promotional] efforts succeeded in reaching the Jewish phonebook users who are plaintiff's

target audience and who, along with advertisers, comprise the relevant segment of the public for purposes of assessing secondary meaning.").

Applying these principles to the undisputed facts here, Moskovits does not own the Marks based on these activities. While Moskovits hosted "various in-person events" and used the Marks "to identify the hotel services available at The Williamsburg Hotel," *see* Defendants' Opposition at 5, these efforts are distinct from offering services as a hotel. Moreover, these activities occurred at a time when the Hotel was under construction, such that they could not constitute offering hotel services. *See* Moskovits Decl. ¶ 9. In fact, Moskovits' promotional events were not held on the actual hotel premises and were "focused on grass roots relationships with locals to cultivate a strong presence in the community, regularly collaborating with other local businesses and non-profit groups." *See* Moskovits Decl. ¶ 17; *id.* ¶ 7 (discussing registration of domain name in 2014 and display of "The Williamsburg Hotel" Mark on website in 2015). That is distinct from promotion of the Hotel, after opening, to actual prospective customers who would use the Hotel's services. In this way, the facts here are analogous to *Am. Express Co. v. Goetz*, 515 F.3d 156 (2d Cir. 2008). In *Goetz,* the court held that the Plaintiff's mark "My Life, My Card" was a component of plaintiff's business proposal to credit card companies rather than a mark designating the origin of any goods or services offered to actual credit card consumers. *Id.* at 160. The claim was thus "no better than that of an advertising agency that offers its clients a marketing concept to enhance their sales." *Id.* Set against this standard, Moskovits' marketing efforts prior to the actual opening of the Hotel do not give rise to a protectable interest in the Marks under the Lanham Act.

The Court appreciates that both Marks in question were "prominently displayed in marketing materials and at promotional events in an effort to market and promote the brand

generally and garner support for the Hotel from Brooklyn locals." Moskovits Decl. ¶ 8. But

providing a "vision of the experience that one could expect[,]" *id.* at ¶ 9, is different from

actually providing customers with the experience. As the Trustee correctly summarized:

> Until the Debtor's Hotel was actually open to the public, the trademarks were not
> being used for hotel services. As the Trademark Trial & Appeal Board explained
> [i]n *BD Hotels, LLC v. Linczyc*, 2015 TTAB LEXIS 561, at *9 (T.T.A.B. May 29,
> 2015), "'providing hotel services' means providing a commercial establishment
> that offers lodging." Since none of the pre-opening activities cited by Defendants
> involved the provision of hotel services, they do not constitute use for hotel
> services, and Defendants' effort to claim rights based on such activities fails as a
> matter of law.

*See* Reply ¶ 12.

Moskovits cites to *Talk to Me Products, Inc.*, 804 F. Supp. at 559, for the proposition that

"[t]he exclusive right to a distinctive mark belongs to the one who first uses it in connection with

a particular line of business." *See* Defendants' Opposition at 4. But *Talk to Me Products* does

not support the Defendants' position. In that case, the "use" consisted of the actual sales of a

product. *See* 804 F. Supp. at 561. By contrast, Moskovits has not identified any use of the

Marks by Moskovits while the Hotel was in operation. Instead, Moskovits has only come

forward with evidence of actions before the Hotel opened. *See Scotto v. Almenas*, 143 F.3d 105,

114 (2d Cir. 1998) ("The non-moving party may not rely on conclusory allegations or

unsubstantiated speculation. . . . Instead, the non-movant must produce specific facts indicating

that a genuine factual issue exists. . . . If the evidence [presented by the non-moving party] is

merely colorable, or is not significantly probative, summary judgment may be granted.")

(citations and internal quotations omitted).[10]

---

[10]     Additionally, the court in *Talk to Me Products* sought to distinguish between a purely first-in-time use
versus a "bona-fide" use, affirming that use of a trademark "must be . . . more than a pro forma use." 804 F. Supp. at
561. But no such issue is raised by the facts here, as all of the promotional events and advertising efforts relied upon
by Moskovits took place before the Hotel's construction.

The closest that Moskovits comes to claiming prior use of the Marks while the Hotel was in operation is her very generalized statement that she "controlled the marketing, sales and brand development and the hotel services relating to the guest experience and services and experience rendered under the Marks by virtue of her relationship with the [H]otel as a Manager." Defendants' Opposition at 12; *see also* Defendants' Responsive Facts ¶ 38 (disputing that Moskovits did not operate the Hotel's business or use the service marks at issue). But she does not dispute the fact that the Williamsburg Hotel BK LLC—the Manager—managed the Hotel prior to the Trustee's appointment. *See* Defendants' Responsive Facts ¶ 3 ("Defendants do not dispute that prior to the Trustee's appointment, the Manager managed the Hotel."). Nor does she dispute that the Manager collected all the revenues from operation of the Hotel and that these revenues were used to pay for the Hotel's operations. *See id.* ¶¶ 26–27. Indeed, the Hotel was the only hotel managed by the Manager during the time periods at issue here. *See id.* ¶ 28.

As against these concessions, the details of Moskovits' claimed use are all carefully circumscribed and reflect only her creation of the brand and marketing of the Hotel prior to its opening. *See, e.g., id.* ¶ 38 (disputing that Moskovits did not operate the Hotel's business or use the marks by setting forth her role "[p]rior to forming the Manager entity"); *see also id.* ¶¶ 44–49 (detailing Moskovits' efforts prior to the Hotel being opened). After the Hotel was opened, she concedes that the Hotel was run by others, even if she is inconsistent as to who that operator was. *See id.* ¶ 3 (Hotel run by the Manager entity); *id.* ¶ 52 ("Lichtenstein managed and operated the [H]otel on a day-to-day basis and worked closely with the officers and employees."); *id.* ¶ 53 ("Manager could not have used the [M]arks without Moskovits' permission.").[11] Ultimately, her

---

[11] While Moskovits claimed she granted the Manager a license to use the Marks, the schedules filed by the Debtor at the start of the case do not list any such contract. *See* Defendants' Responsive Facts ¶ 39; Moskovits Decl. ¶ 19.

inconsistent statements do nothing to change the undisputed fact that these Marks were used by

those running the Hotel after it opened in 2017.  *See ITC Ltd.*, 482 F.3d at 146–47 (party may

demonstrate ownership of a mark by showing it was first to use, and continues to use, the mark);

*La Societe Anonyme des Parfums le Galion*, 495 F.2d at 1271 (ownership goes to "[t]he user who

first appropriates the mark"); *cf.* Defendants' Responsive Facts ¶ 37 (conceding that Moskovits

received legal advice from a trademark attorney that "[g]enerally, whoever is operating the

business and using the mark should own the mark, unless there is a reason otherwise").

Indeed, Moskovits' efforts to claim an exception to the general rule of hotel name

ownership fails the four-factor test for such an exception articulated in *Freeland*, 204 S.W. at

1125.  The *Freeland* court held that "[a] hotel is generally such a building and premises as is

especially and permanently adapted to that business and is known by its name, which ordinarily

attaches to and remains with the location rather than the particular proprietor."  *Id.*; *see also Rhea

v. Bacon*, 87 F.2d 976 (5th Cir. 1937) (appellants' right to use a hotel name passed to them with

transfer of property from appellees); *Daniel Boone Realty Co. v. Clemens*, 88 Pa. D. & C. 403,

417 (C.P. Berks 1954) (hotel name was a fixed trade name applicable to hotel premises and was

not a transitory name capable of adoption by an individual intending to open another hotel using

that name); *Stogap Realty Co., Inc. v. Marie Antoinette Hotel Co.*, 217 A.D. 555, 564 (N.Y. App.

Div. 1926) ("[T]he right to use the name 'Hotel Marie Antoinette' was inseparably associated

with the Sixty-sixth street premises and passed as an incident with the transfer of the fee of such

premises.").  When analyzing whether there is an exception to this rule, the following factors are

considered: (1) whether the building and premises are designed to be used permanently as a

hotel; (2) whether the name given to the hotel is that of an individual conducting it or is

impersonal; (3) whether the tenant or proprietor who is seeking to divert the name to another

location is the person who first gave it that name; and (4) whether the name has been applied

exclusively to the location or has been used to designate a person's business wherever it was

conducted.  *See Freeland*, 204 S.W. at 1125.

An analysis of the *Freeland* factors supports a finding that Moskovits has not established

an exception to the general rule.  As to the first factor, the building and premises were built and

designed to be used as a hotel.  *See* Moskovits Decl. ¶ 13.  As to the second factor, the

impersonal name given to the Hotel references the neighborhood within which the Hotel sits; the

name does not reference Moskovits, Lichtenstein, or any other individual person who might

otherwise be associated with the Hotel.[12]  As to the fourth factor, the name was applied to the

only existing hotel in Williamsburg, which, at all relevant times, was the only hotel managed by

the Manager.  *See* Defendants' Responsive Facts ¶ 28.  All the while, Moskovits only claims she

had an *intention* to use the name to develop a national hotel brand; indeed, no other locations

were ever developed.  *See* Moskovits Decl. ¶ 13.  While the Court acknowledges the third factor

weighs in favor of Moskovits because she coined the Hotel's name, this cannot overcome the

factors in the Plaintiff's favor as to this exception.  *See* Moskovits Decl. ¶ 5.

B.     <u>Moskovits' Claims as to Development of the Idea for the Marks</u>

Moskovits also relies on her development of the idea for the "The Williamsburg Hotel"

Mark as early as 2014.  *See* Moskovits Decl. ¶¶ 5–7.[13]  But this does not change the result.

"[T]he mere conception of a mark, without its subsequent use in commerce, [is] insufficient to

---

[12]     Indeed, Moskovits presented no evidence showing that actual and prospective customers associated the
Marks with herself as an individual or services she offered as opposed to the Debtor's Hotel.  *See Plitt Theatres,
Inc.*, 697 F. Supp at 1035 ("There is absolutely no evidence that consumers associate the mark with Plitt's services
rather than defendants' theatre building[.]").

[13]     Moskovits also claims to have conceived of the idea in 2012.  *See* Moskovits Decl. ¶ 4 ("The Williamsburg
Hotel is the brainchild of myself and Michael that began in 2012.").

confer rights on the conceiver of the mark under federal trademark law." *Rick v. Buchansky*, 609 F. Supp. 1522, 1531 (S.D.N.Y. 1985); *see also* 2 McCarthy on Trademarks & Unfair Competition § 16.11 (5th ed.) ("It is a basic rule that a concept or an idea for a new trademark is not itself a 'trademark.'").

Moskovits similarly relies upon her intent to open additional hotel locations to establish that "The Williamsburg Hotel" Mark was not solely associated with the Hotel and the building. *See* Moskovits Decl. ¶ 13. But without more, this fact does not create a protectable service mark under the Lanham Act because such an intent standing alone does not equate to use with an established business. Traditionally, the rule has been that the use of a mark in the preliminary steps of establishing a business *does not* establish a priority date or a use sufficient for federal registration. *See* 2 McCarthy on Trademarks and Unfair Competition § 16:12 (5th ed.). "A mark is merely a symbol of existing good will. If a business has not yet been established, there can be no good will and nothing yet created for the 'mark' to represent or symbolize." *Id.*; *see also Lyons v. Am. Coll. of Veterinary Sports Med. and Rehab.*, 859 F.3d 1023, 1030 (Fed. Cir. 2017) ("[M]ere preparation and publication of future plans do not constitute use in commerce."); *In re Kronholm*, 230 U.S.P.Q. 136 (T.T.A.B. 1986) (holding that the use of a mark in the announcement of a future service does not constitute use as a service mark); *accord In re Sanger Telecasters Inc.*, 1 U.S.P.Q.2d 1589 (T.T.A.B. 1986) (holding use of a mark in advertising, promoting and preparing for services to be available in the future, but not yet available, insufficient to support an application for registration; specifically, use in preparing facilities and obtaining clearances and sponsors for television broadcasting services cannot support registration for television broadcasting services because such services were not rendered prior to the application.); 2 McCarthy on Trademarks and Unfair Competition § 16:12 (5th ed.). Moreover,

any intent to open additional hotels while the Hotel was already open would fail given Moskovits

was not the party using the Marks in commerce.  *See supra* Section II.A.

C.    Moskovits' Registration of the Marks

Finally, Moskovits argues that her registration of the Marks is *prima facie* evidence of her

ownership.  It is true that, proper registration of a mark is *prima facie* evidence of the ownership

of the mark, which would create a presumption in her favor.[14]  *See* 15 U.S.C. § 1057(b); *see also*

2 McCarthy on Trademarks and Unfair Competition § 16:19 (5th ed.); *Elastic Wonder, Inc.*, 179

F. Supp. 3d at 314; *Lane Cap. Mgmt., Inc.*, 192 F.3d at 345.  But even with such a presumption, it

is overcome by the undisputed evidence that Moskovits did not use the Marks in commerce.

Thus, the registration was improperly filed as Moskovits was not the owner of the "Sleep With A

Local" Mark through prior use, as discussed above.  A trademark registration may be cancelled

where a registrant does not own the mark.  *See* TMEP § 803.01 ("An application to register a

mark must be filed by the owner of the mark . . . ."); *Cent. Mfg., Inc. v. Brett*, 492 F.3d 876, 883

(7th Cir. 2007) (holding that where plaintiff failed to show prior use and therefore ownership

over trademark, the court may cancel registration of the trademark); *see also Vantone Grp. Ltd.*

---

[14]    This presumption is only applicable to the "Sleep With A Local" Mark.  "The Williamsburg Hotel" Mark
was issued a supplemental registration, which does not constitute *prima facie* proof that Moskovits owns that Mark
under the Lanham Act.  *See* 15 U.S.C. § 1057(b) ("A certificate of registration of a mark upon the principal register
provided by this Act shall be *prima facie* evidence of the validity of the registered mark and of the registration of the
mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in
commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or
limitations stated in the certificate."); *see also In re Medical Disposables Co.*, 1992 TTAB LEXIS 60, at *11
(T.T.A.B. 1992) ("[A] registration issued on the Supplemental Register is not entitled to the presumptions of Section
7(b) of the statute.  It does not constitute *prima facie* evidence of registrant's ownership of the mark, or of its
exclusive right to use the mark in commerce.  In fact, it is not *prima facie* evidence of anything except that the
registration issued."); *In re Federated Dep't Stores*, 3 U.S.P.Q.2d 1541, 1543 (T.T.A.B. 1987) (Supplemental
Register registration is "entitled to no presumptions of validity, ownership, use or priority"); *see also* Hr'g Tr.
50:11–17 (Mar. 1, 2023) ("Because the registration for the hotel name, The Williamsburg Hotel is actually a
supplemental registration; it's not on the Principal Register.  And what that means is under the Lanham Act statute,
it's not actually *prima facie* proof of anything.  So it doesn't create a presumption that she owns that at all.  There is
such a presumption with respect to 'Sleep With a Local.'").

*Liab. Co.*, 2016 WL 4098564, at *5 ("[A] senior user of even an unregistered mark is entitled to cancellation of a junior user's registration, as trademark ownership rights go to the first-to-use, not [the] first-to-register.") (citations and quotations omitted).

In addition, Moskovits' attempt to register the Marks suffers from other defects. Moskovits indicates that she created the Marks with Lichtenstein. *See* Moskovits Decl. ¶¶ 4, 6, 8, 10. When an applicant files individually for a mark that is owned jointly with another party, the registration is void *ab initio*. *See Wonderbread 5 v. Gilles*, 115 U.S.P.Q.2d 1296, at *14 (T.T.A.B. 2015) (finding application filed by individual was void *ab initio*, invalid, and to be cancelled where partnership owned the mark); *Conolty v. Conolty O'Connor NYC LLC*, 111 U.S.P.Q.2d 1302, at *11 (T.T.A.B. 2014) (application *void ab initio* because applicant was not sole owner of the mark). While Moskovits registered the Marks in her name only, Moskovits represents that she created the Hotel together with Mr. Lichtenstein. *See* Mandel Decl. Exs. M, O.; *see also* Moskovits Decl. ¶ 4 (stating that "[t]he Williamsburg Hotel is the brainchild of myself and Michael that began in 2012"); *id.* ¶ 9 ("Michael and I personally handled all aspects of these marketing events independent of the business entities of Manager or Debtor."). Moskovits goes on to explain that "The Williamsburg Hotel" was an idea born by herself and Lichtenstein and provides examples of how they collaborated on the business. *See* Moskovits Decl. ¶¶ 4–15. Further, Moskovits explicitly states that Lichtenstein handled day-to-day Hotel operation while she worked on brand development, noting that much of the marketing and advertising were personally operated by both of them until formation of the Manager in 2016. *See id.* ¶¶ 6, 15–16.

A final defect relates to the dates of her claimed use.  Moskovits asserts dates of use here that are different from those dates claimed in her trademark applications.[15]  By claiming use of the Marks prior to the first dates of use on the trademark applications, Moskovits must satisfy the burden of clear and convincing evidence rather than the common law burden of a preponderance of the evidence.  *See Mt. Eden Organics, Inc. v. Native Nutrients*, 2015 TTAB LEXIS 173, at *8 (T.T.A.B. 2015).  To satisfy the clear and convincing evidence standard, a party must present evidence that is "specific, firm and consistent."  *Id.* at *9.  Moskovits fails to satisfy that burden.

Considering all the facts in the record in a light most favorable to the Defendants, no fact finder could conclude that there was a proper personal registration of these Marks by Moskovits.[16]

## **CONCLUSION**

In conclusion, the Debtor has satisfied the general presumption that the Marks were conveyed in the sale of its business.  *See Am. Sleek Craft, Inc.*, 131 B.R. at 996 ("The law presumes that when a business is conveyed, its trade name and good will are also conveyed.") (citing *Plitt Theatres, Inc.*, 697 F. Supp. at 1034–35).  Moskovits is the only Defendant who has claimed ownership of the Marks in this adversary proceeding but has no basis to claim ownership, as discussed above.  Likewise, no other Defendant (or non-party) has claimed ownership of the Marks here.  Accordingly, all Defendants have failed to satisfy their burden of

---

[15]    Moskovits claimed to first use "The Williamsburg Hotel" Mark in December 2016 on the application filed with the USPTO and claims to first use the "Sleep With A Local" Mark in January 2017 on the application filed with the USPTO.  *See* Reply ¶ 1; *see also* Defendants' Opposition at 13.  Yet, Moskovits in this case asserts use of the "The Williamsburg Hotel" Mark as far back as 2014.  *See id.* ¶¶ 5, 7; Defendants' Opposition at 5.  Moskovits also claims that she started using the "Sleep With A Local" Mark as early as 2015.  *See* Moskovits Decl. ¶¶ 4–7.

[16]    Moskovits has argued that she owned and licensed the Marks to the other Defendants.  *See* Defendants' Opposition at 7–12; Moskovits Decl. ¶¶ 19, 21.  The Court does not reach the licensing issue because, as discussed, Moskovits did not own the Marks and therefore could not license the Marks to the other Defendants.

putting forth evidence to show that the Marks did not pass in the sale to Quadrum. *See id.* at 997 ("Unless there is evidence to the contrary, a trade name will be presumed to have passed, even in the absence of formal assignment, to one to whom the business has been transferred.") (quoting *Dovenmuehle v. Golldorn Mortgage Midwest Corp.*, 670 F. Supp 795, 798 (N.D. Ill. 1987), *aff'd* 871 F.2d 697 (7th Cir. 1989); *see id.* at 997 (presumption for marks passing with a sale exists because a mark cannot be separated from the business; otherwise, it ceases to exist). This holds true here, where the Marks' existence is intertwined with the physical Hotel and the related business. Given the entire record here, the general rule applies, and the Marks passed with the sale of the Debtor's business to Quadrum.

For the reasons stated above, the Motion is granted. The Trustee should settle an order on five days' notice. The proposed order must be submitted by filing a notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the proposed order attached as an exhibit to the notice. A copy of the notice and proposed order shall also be served upon opposing counsel.

Dated: White Plains, New York
       May 7, 2025

                                        */s/ Sean H. Lane*
                                        UNITED STATES BANKRUPTCY JUDGE